## Case No. 3,093.

### CONCORD R. CORP. v. TOPLIFF.

[21 Int. Rev. Rec. 74.]

Circuit Court, D. New Hampshire. Oct. Term, 1874.

INTERNAL REVENUE—CORPORATE SECURITIES—REPEAL OF INCOME TAX.

The tax on bonds, coupons, interest, dividends and profits of railroads and other corporations has in all the enactments since 1861 been kept entirely distinct and separate from the income tax proper, and the act of 1867 [14 Stat. 480], terminating the income tax with the year 1870, does not, therefore, apply to the former tax, which continued in force until the 1st day of August, as provided by the 17th section of the act of July 14, 1870 [16 Stat. 261].

[At law. Action by the Concord Railroad Corporation against E. M. Topliff.]

Isaac W. Smith, for plaintiffs.
Henry P. Rolfe, U. S. Atty., for defendant.

SHEPLEY, Circuit Judge, and CLARK, District Judge. Assumpsit to recover back from the defendant, who is internal revenue collector for the second district of New Hampshire, the sum of $4,351.28, alleged to have been illegally collected of the plaintiffs by the defendant. Plea, general issue, with brief statement. The hearing was had

upon a case agreed: "That the plaintiffs, a railroad corporation organized under a charter from the legislature of New Hampshire, on the 22d day of April, 1870, declared a dividend of $78,947.37 out of the net earnings for the six months ending March 31, 1870, inclusive of the tax thereon, payable to the stockholders May 2, 1870. The profits over the dividend for the same period were $3,934.13. On the 7th day of June, 1870, the plaintiffs made return to the assistant assessor of the seventh division of said district of the dividends declared upon the earnings for the said period, and of the profits over the dividend. On the 15th day of June, 1870, the assistant assessor of the seventh division of said district assessed against the plaintiffs a tax of 5 per cent. on said sum of $78,947.37, amounting to $3,947.37, and a tax of 5 per cent. on said sum of $3,947.37, amounting to $196.70, making a total of tax of $4,144.07, and returned the same to the assessor for said district, who, on the 20th day of June, 1870, committed the same, with his list of taxes for that month, to the defendant, who was the collector for said district. Said sum of $4,144.07, upon the demand of the defendant, and upon his threat to distrain upon the property of the plaintiffs if payment should be refused, the plaintiffs paid to said defendant on the 30th day of July, 1870, with 5 per cent. additional, to wit, $207.20, as penalty exacted by the defendant for non-payment of said tax in the month of June, 1870, making a total of $4,351.28 so paid by the plaintiffs to the defendant, and which was paid by them under protest, in writing, that they were not liable to pay the same, nor any part thereof, and which was delivered to the defendant at the time of payment. April 18, 1871, the plaintiffs appealed from said assessment and collection. to the commissioner of internal revenue, according to the provisions of law in that regard and the regulations of the treasury established in pursuance thereof, and praying for the refunding of the several sums paid as aforesaid; and the decision of the commissioner was had thereon June 14, 1871, rejecting the claim of the plaintiffs for refunding the several sums aforesaid. On the 20th day of September, 1871, the day before this suit was brought, the plaintiffs demanded the repayment of said several sums, which was refused." It was also agreed "that if the court shall be of opinion that the plaintiffs are entitled to recover of the defendant, judgment shall be rendered for the plaintiffs for such sum as the court shall find to be due, and costs; otherwise judgment shall be rendered for the defendant for his costs."

The question here is, were these taxes legally assessed and collected of the plaintiffs? The earnings of the plaintiffs' corporation, upon which the tax was laid, and out of which it was collected, accrued in the six months from October 1, 1869, to March 31,

1870. It does not appear precisely how much was earned in the last three months of 1869, nor how much in the first three months of 1870; but if the monthly earnings were uniform one-half of the sum of $78,947.37, to wit, $39,473.63, was earned in 1869. As to this one-half, it is not now contended that it was not subject to taxation. Since this suit was brought, in September, 1871, the cases of Barnes v. The Railroads, 17 Wall. [84 U. S.] 294, have been decided by the supreme court at Washington, and are so far decisive of this case. But as to the other one-half of the earnings, to wit, the sum of $39,473.68, accruing in the year 1870, the plaintiffs contend that the tax was illegal and without authority; that although, as decided in Barnes v. Philadelphia & R. R. Co. (Dec. Term, 1872) 17 Wall. [84 U. S.] 294, a tax of 5 per cent. might be assessed upon dividends declared subsequent to December 31, 1869, upon net earnings prior to that date, yet there is no authority by law for assessing taxes upon dividends declared out of earnings that accrued subsequent to that date, on which the tax was not assessed by the 1st day of March, 1870. Such was his position on the argument of the case, and he relied upon the act of March 2, 1867 (14 Stat. 480). "That the taxes on incomes herein imposed shall be levied on the 1st day of March, and be due and payable on or before the 30th day of April in each year, until the year 1870, and no longer." But if the position of the plaintiffs is correct, that this tax was illegal because it was not assessed until after March 1, 1870, then it is difficult to see—though not so claimed by plaintiffs—how the tax on the earnings of the last three months of 1869 was legal, because the dividend on the whole six months' earnings was not declared until the 22d day of April, 1870, and the tax was not assessed on any portion thereof until the 17th of June following. All the earnings of the road, in that particular, are in the same category. Since the argument in this case, the supreme court has decided in the Stockdale Cases [Stockdale v. Doswell, 16 Wall. (83 U. S.) 156; Same v. Atlantic Ins. Co., 20 Wall. (87 U. S.) 323] that the income of corporations, accruing between the first day of January, 1870, and the 1st day of July of the same year, is liable to taxation; and they based their decision upon the 17th section of the act of July 14, 1870, which is as follows, so far as it is material to this case: "And be it further enacted, that sections one hundred and twenty, one hundred and twenty-one, one hundred and twenty-two, and one hundred and twenty-three of the act of June 30, 1864, entitled 'An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' as amended by the act of July 13, 1866, and the act of March 2, 1867, shall be construed to impose the taxes therein mentioned to the

first day of August, 1870, but after that date no further taxes shall be levied or assessed under said sections." This act was passed July 14, 1870, and the report of the Stockdale Cases [supra] is silent as to the time the taxes under consideration therein were assessed, whether before or after the passage of the act. But in this case it is agreed that the tax was assessed on the 10th day of June, 1870, which was before that act was passed; and so the assessment of the tax cannot be supported under it, as the act provides distinctly that it "shall not be construed to affect any act done, right accrued or penalty incurred under former acts; but every such right is hereby saved."

Now, it is very manifest that if this assessment was not legal before that act,—if there was no authority for it,—then it was not legal afterwards, because, being made before the act passed, it was, by expressed terms, not to be affected by it. This tax, then, so far as laid upon the earnings of the road accruing, subsequently to Dec. 31st, 1869, if supported at all, must be upon different grounds from those on which were placed the Stockdale Cases, by a majority of the court, and we think it may be so supported; and in the Stockdale Cases two of the judges (Bradley and Chief Justice), while concurring in the opinion of a majority of the court, did so expressly upon, to them, the more satisfactory ground that the 120th and 122d sections of the statute of 1864 (13 Stat. 283, 284), amended by the act of 1866, had not been repealed or limited in duration by the 119th section of the same act, as amended by the act of 1867 (14 Stat. 480), limiting the income tax to the year 1870, as the plaintiffs contend.

The opinion of Mr. Justice Bradley, delivered in the Stockdale Cases, shows clearly the ground on which he and the chief justice placed their concurrence in the judgment of the court, and, if that opinion is sound, then the tax assessed in this case upon the earnings of the railroad accruing in the first three months of 1870, were rightfully assessed and judgment must be for the defendant. Did, then, the provision in the act of 1867 (14 Stat. 480), "That the taxes on incomes herein imposed shall be levied on the first day of March, and be due and payable on or before the thirtieth day of April in each year, until and including the year eighteen hundred and seventy and no longer," repeal section 122 of the act of 1864 (13 Stat. 284), as amended by the act of 1866, which provides for the assessment of a tax upon any dividend of any railroad, canal, turnpike, canal navigation or slackwater company as part of the earnings, profits, income, or gains of such company, and of all profits carried to the account of any fund, or used for construction, etc.? To answer this question satisfactorily an examination of the history of the income taxes, and of taxes upon railroads and other corporations, with the various statutes creating or modifying the same, becomes necessary. The income tax first appeared in the act of August 5, 1861 (12 Stat. 309, § 49), in these words: "That from and after the first day of January next, there shall be levied, collected and paid, upon the annual income of every person residing in the United States, whether such income is derived from any kind of property, or from any profession, trade, employment, or vocation carried on in the United States, or elsewhere, or from any other source whatever, if such annual income exceeds the sum of eight hundred dollars, a tax of three per centum on the amount of such excess of such income above eight hundred dollars; provided, that upon such portion of said income as shall be derived from interest upon treasury notes or other securities of the United States, there shall be levied, collected, and paid a tax of one and one-half per centum. Upon the income, rents, or dividends accruing upon any property, securities or stocks owned in the United States by any citizen of the United States residing abroad, there shall be levied, collected and paid a tax of five per centum, excepting that portion of said income derived from interest on treasury notes and other securities of the government of the United States, which shall pay one and one-half per centum. The tax herein provided shall be assessed upon the annual income of the persons hereinafter named for the year next preceding the time for assessing said tax, to wit, the year next preceding the first day of January, eighteen hundred and sixty-two; and said taxes, when so assessed, shall become a lien on the property, or other sources of said income for the amount of the same, with interest and other expenses of collection, until paid; provided, that in estimating said income, all national, state, or local taxes assessed upon the property, from which income is derived, shall be first deducted."

It will be observed, that here are three distinct income taxes,—one of three, one of one and one-half and one of five per centum,—and the only deduction is that of taxes paid. An examination of the whole act shows, that nothing is said in it concerning the taxation of the earnings, dividends or bonds of corporations or companies; but all "sources of income whatever" were included in the provisions of the one section. This tax was made payable on or before the 30th day of June, 1862, and had no limitation as to the time of its continuing in force. If there had been, it is manifest, that the tax must have ceased on all incomes alike; whether derived from bonds, dividends, earnings of railroad companies or otherwise. In 1862 congress again dealt with the income tax and provided it should be assessed on the first day of May, 1863, on the income of the year ending the 31st day of December preceding, and so thereafter, until and including the year 1866, and no longer. Here is the first limitation as to the time of its duration. The tax was

made payable on the 30th day of June in each year of its continuance. But in this year, 1862, there appeared (12 Stat. 469, § 81,) a distinct provision for the taxation of railroad bonds and dividends, which is as follows: "And be it further enacted, that on and after the first day of July, 1862, any person or persons owning or possessing, or having the care or management of any railroad company or railroad corporation, being indebted for any sum or sums of money, for which bonds or other evidences of indebtedness have been issued, payable in one or more years, upon which interest is, or shall be stipulated to be paid, or coupons representing the interest shall be or shall have been issued to be paid, and all dividends in scrip or money, or sums of money thereafter declared due or payable to stockholders of any railroad company, as part of the earnings, profits or gains of said companies, shall be subject to pay a duty of three per centum on the amount of all such interest or coupons or dividends whenever the same shall be paid; and said railroad companies or railroad corporations, or any person or persons owning, possessing, or having the care or management of any railroad company or railroad corporation, are hereby authorized and required to deduct and withhold from all payments made to any person, persons, or party, after the first day of July, as aforesaid, on account of any interest or coupons, or dividends due and payable as aforesaid, the said duty or sum of three per centum, and the duties deducted as aforesaid, and certified by the president or proper officer of said company or corporation shall be a receipt and discharge, according to the amount thereof of said railroad companies or railroad corporations, and the owners, possessors, and agents thereof, on dividends and on bonds or other evidences of their indebtedness, upon which interest or coupons are payable, holden by any person or party whatsoever, and a list or return shall be made and rendered within thirty days after the time fixed when said interest or coupons or dividends become due or payable and as often as every six months, to the commissioner of internal revenue, which shall contain a true and faithful account of the duties received and chargeable as aforesaid, during the time when such duties have accrued or should accrue, and remaining unaccounted for; and there shall be annexed to every such list or return a declaration under oath or affirmation in manner and form as may be prescribed by the commissioner of internal revenue, of the president, treasurer, or some proper officer of said railroad company or railroad corporation, that the same contains a true and faithful account of the duties so withheld and received during the time when such duties have accrued or should accrue, and not accounted for; and for any default in the making or rendering of such list or return, with the declaration annexed as aforesaid, the person or persons owning, possessing or

having the care or management of such railroad company or railroad corporation making such default, shall forfeit as a penalty the sum of five hundred dollars; and in case of any default in making or rendering said list, or of any default in the payment of the duty or any part thereof accruing, or which should accrue, the assessment and collection shall be made according to the general provisions of this act,"—and by section 91 of the same act, such gains, income, or profits as were derived from companies, corporations, or savings institutions, which had been assessed or paid thereon the tax, were deducted from the annual income tax.

Here we have a distinct method and time for assessing the bonds, dividends and profits of railroad companies and corporations different from the method and time of assessing the income tax, properly or usually so called,—and an exception of such bonds, dividends and profits out of it. In 1861, such bonds, dividends and profits made a part of the income subject to taxation, and were assessed once a year in the same manner as other sources of income; but in 1862 they were assessed in a different manner, at different times, and were expressly excepted out of the income tax, and so continued until after the assessment of the tax in this suit. In 1864, congress again modified the income tax, and provided it should be continued beyond 1866; and "that the duties or incomes herein imposed shall be levied on the first day of May, and be due and payable on or before the thirtieth day of June in each year, until and including the year 1870, and no longer"—(substantially the same provision as to the duration of the tax, as in the act of 1867, on which the plaintiffs rely to show the illegality of the tax in this suit). But the same act continued the tax on the bonds, dividends and profits of railroad and other companies, carried to any fund, substantially as in 1862, with a provision that the list or returns should be made and rendered to the assessor or assistant assessor in duplicate, "and one of said lists or returns shall be transmitted and the duty paid to the commissioner of internal revenue within thirty days after the time when said interest, coupons or dividends become due and payable, and as often as every six months." It also authorized the deduction of such dividends, etc., out of the income tax proper. In 1865 and 1866 respectively alterations were made in the income tax. But the bonds, dividends and profits of corporations and companies continued to be taxed in a distinct manner from the assessment of the income tax, properly so called, as before substantially. In 1867, further modifications were made; but no alterations were made in regard to the tax on bonds, dividends or profits of railroads or other corporations. They continued to be taxed in the same way and manner as before, and no limitation was made other than that in regard to income

taxes. In 1870 (16 Stat. 261), congress enacted "that sections one hundred and twenty, one hundred and twenty-one, one hundred and twenty-two, and one hundred and twenty-three of the act of June thirty, eighteen hundred and sixty-four, entitled," etc., "as amended by the act of July 13th, 1866, and the act of March 2d, 1867 (and these are the sections which impose taxes on dividends of banks, railroads, and other corporations, and on salaries of officers), should be construed to impose the taxes therein mentioned to the first day of August, 1870, but after that date no further taxes shall be levied or assessed under said sections."

In looking through the legislation from 1862 to 1870, it is very obvious that in all the enactments since 1861 the income tax, properly so called, has been kept entirely distinct and separate from the taxation of bonds, dividends, and earnings of corporations. It has been assessed at a different time and in a different manner—the one, once a year; and the other, usually twice: always as often as a dividend was declared, and as often as once in six months. The one was upon the annual income of each year, ending Dec. 31st; and the other, whenever the dividend was declared. The one went usually into the annual list for collection, and the other into the monthly, but never into the annual, and the one is known and recognized in the statute as the income tax, or the tax on incomes, and the other never so. Again, by the statute of 1862 (12 Stat. 474, § 92), it is provided that "the duties on incomes herein imposed shall be due and payable on or before the 30th day of June in each year thereafter, until and including the year eighteen hundred and sixty-six and no longer." Now this could not include and apply to the tax on dividends, for which railroad corporations were assessed, because the very same statute of 1862 fixed a different time for their assessment, showing very clearly that the provision applied to the income tax properly so called, and to that alone. So in 1864 (13 Stat. § 119), it was provided "that the duties on incomes herein imposed shall be levied on the first day of May, and be due and payable on or before the 30th day of June in each year, until and including the year eighteen hundred and seventy and no longer." Now, this could only be applied to incomes proper, and not to taxes on bonds and dividends of corporations; because, in a subsequent section of the same act, the one hundred and twenty-second (13 Stat. 284), it was provided, in regard to said taxes, that "a list or return shall be made and rendered to the assessor or assistant assessor in duplicate, and one of said lists or returns shall be transmitted, and the duty paid to the commissioner of internal revenue, within thirty days after the time when said interest, coupons, or dividends become due and payable and as often as once in six months." Now if the provi-

sion of the one hundred and nineteenth section of the act of 1864, to wit, "that the duties on incomes herein imposed shall be levied on the first day of May, and be due and payable on or before the 30th day of June, in each year, until and including the year 1870, and no longer," applies to the income tax proper, and not to bonds and dividends of corporations, it is difficult to see how the provision of the act of 1867, which is relied upon by the plaintiffs, can have a wider application, because it is in almost the same words as the act of 1864, and is equally inapplicable to the tax on bonds and dividends of railroads and other corporations. Again, in 1866, congress struck out the provision of the act of 1864, in regard to the assessment on the income tax, so called, and re-enacted, in almost the same words, "that the taxes on incomes herein imposed shall be levied on the first day of May, and be due and payable on or before the 30th day of June in each year, until and including the year 1870 and no longer." But this provision could not apply to the tax on bonds and dividends, and profits of railroads or other corporations, any more than the similar provisions of the act of 1864, because, in the same act of 1866, congress provided in a subsequent section for a tax on such bonds, dividends, and profits in a distinct and different manner and time; to wit (14 Stat. 139), it says, "and a list or return shall be made and rendered to the assessor or assistant assessor on or before the 10th day of the month following that in which said interest, coupons, or dividends become due and payable, and as often as every six months." Next comes the act of 1867, which amends the 119th section of the act of 1864, and provides as follows: "That the taxes on incomes herein imposed shall be levied on the first day of March, and be due and payable on or before the thirtieth day of April, in each year, until and including the year 1870, and no longer." But this we think must be confined to the income tax proper, the same as in years before, and cannot be extended or applied to the tax on bonds, dividends or profits of railroads or other corporations, because the act of 1867 did not in any way amend, change, alter, or repeal the provision of the act of 1866, that such bonds, dividends or profits shall be subject to a duty of five per centum on the amount of all such interest, or coupons, dividends or profits, whenever and wherever the same shall be payable . . . and that a "list or return shall be made and rendered to the assessor or assistant assessor on or before the tenth day of the month following that in which said interest, coupons, or dividends become due and payable, and as often as every six months." The different time and manner of the assessment of the tax in the two cases make it evident that the limitations, until the year 1870, in the act of 1867, must be confined to the income tax proper,

and that the taxation of bonds, dividends and profits of railroads and other corporations as provided for by the act of 1866 (14 Stat. 139), was not limited thereby, and so continued in force until the 1st day of August, 1870, as provided by the 17th section of the act of July 14th of that year (16 Stat. 261), which was after the tax in dispute in this case was assessed.

It is contended that the tax on bonds, coupons, dividends and profits is an income tax, and so is within the provision that taxes on incomes should be ·assessed in March, 1870, and no longer. See opinion of Strong, J., in Barnes v. The Railroads, 17 Wall. [84 U. S.] 310. But it is a sufficient answer to say that other provisions of the statute make it evident that the provision was intended to apply to the income tax proper, and that the tax on bonds, coupons, interest, dividends and profits of railroads and other corporations was not known or called a tax on incomes, and was assessed in an entirely different manner and time or times. Again, if the provisions of the act of 1867, that the taxes on incomes therein imposed shall be levied on the first day of March, and be due and payable on or before the thirtieth day of April, in each year, until and including the year 1870, and no longer, applied to the tax on railroad dividends, and the bonds and profits of corporations, then, between 1867 and 1870, the tax on such dividends should have been levied in March, and collected in April of each year, instead of whenever the dividend was declared, or before the tenth day of the next month thereafter. But such, it is believed, has never been the practice or understanding of the law.

Judgment for defendant for costs.